FILED
2023 Jun-08  AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| YOLANDA M. CAMARA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 7:23-cv-00009-ACA-HNJ |
| | ) | |
| WARDEN NEELY, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner Yolanda M. Camara ("Camara") filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 asking the court to apply her earned time credit under the First Step Act ("FSA") towards early release from the custody of the Federal Bureau of Prisons ("BOP") and her remaining earned time credits towards supervised release. (Doc. 1 at 9).[1]  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the petition to the undersigned Magistrate Judge for a preliminary report and recommendation.  As explained herein, the undersigned **RECOMMENDS** the court **GRANT** respondent's Motion to Dismiss, (doc. 12), and **DISMISS** this action **WITHOUT PREJUDICE** as **MOOT**.  In the alternative, the undersigned **RECOMMENDS** the court **DISMISS** this action **WITHOUT**

---

[1] Citations herein to "Doc(s). __" correspond to the document number of the pleadings and other materials in the court file, as compiled by the Clerk of Court and reflected on the docket sheet. Unless otherwise noted, pinpoint citations reflect the page of the electronically filed document, which may not correspond to the pagination on the original "hard copy."

**PREJUDICE** pursuant to Rule 41(b) of the *Federal Rules of Civil Procedure* for Camara's failure to prosecute her claims and **DENY** respondent's Motion to Dismiss, (doc. 12), as **MOOT**.

## I.   FACTUAL & PROCEDURAL HISTORY

On December 20, 2022, Camara filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[2]   (Doc. 1).   In her petition, Camara asserts BOP improperly applied her FSA earned time credits arguing (1) the FSA's earned time credits and early release provisions apply to prisoners subject to pending charges or ICE detainers; and (2) BOP's refusal to grant earned time credits towards early release for prisoners who have 18 months or less to serve on their federal sentence constitutes an abuse of discretion and prevented Camara from receiving the benefit of her earned time credits.  (Doc. 1 at 7-8, 16-20).  As relief, Camara asks the court to apply 365 days of her earned time credit under the FSA towards early release from the custody of the BOP and her remaining earned time credit towards supervised release.  (Doc. 1 at 9, 20).

---

[2] Because a prisoner proceeding *pro se* has virtually no control over the mailing of a pleading, the court deems the pleading filed at the time the prisoner delivers the pleading to prison or jail officials to be mailed.  *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988).  "Absent evidence to the contrary in the form of prison logs or other records," the court assumes a *pro se* prisoner delivered [her] pleading to prison authorities the day he [or she] signed it.  *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam); *see also Taylor v. Williams*, 528 F.3d 847, 849 (11th Cir. 2008) (assuming *pro se* petitioner delivered his § 2254 habeas petition to prison authorities on the day he signed it). Camara placed her petition in the prison mail system on December 20, 2022.  (Doc. 1 at 9).

Pursuant to the undersigned's Order to Show Cause, (doc. 2), the respondent filed a Response to Order to Show Cause and Motion to Dismiss ("Motion to Dismiss") on February 24, 2023, asserting the BOP changed its policy concerning application of FSA time credits for inmates with immigration detainers and subsequently applied 365 days of earned time credit to Camara's sentence, shortening her release date to February 27, 2023.   (Doc. 12 at 2; Doc. 12-1 (Robles Declr.) at 2 ¶¶ 4-5; Doc. 12-3 at 2). Respondent argues Camara's petition warrants dismissal pursuant to the mootness doctrine because the court can no longer provide Camara meaningful relief.  (Doc. 12 at 2-3).  The court notified the parties that it would consider the petition for summary disposition and advised Camara of the provisions and consequences of this procedure. (Doc. 14).

Given respondent's representation that BOP anticipated release of Camara to ICE custody on or around February 27, 2023, the undersigned reviewed publicly available BOP and ICE databases to verify Camara's current place of detention.  As of March 10, 2023, BOP records indicated BOP no longer detained Camara and ICE records indicated ICE detained Camara at the South Louisiana ICE Processing Center in Basile, LA.[3]  (*See* Doc. 14 at 3).  The undersigned ordered Camara to file a notice of

---

[3] BOP maintains an Inmate Locator pursuant to which the public may "[l]ocate the whereabouts of a federal inmate incarcerated from 1982 to the present."  *See* https://www.bop.gov/inmateloc/.  The BOP Inmate Locator indicates BOP released Camara from BOP custody on February 28, 2023.  ICE maintains an Online Detainee Locator System pursuant to which the public may "locate a detainee who is currently in ICE custody."  *See* https://locator.ice.gov/odls/#/index.  The ICE Detainee Locator returned no results for Camara as of June 7, 2023, suggesting ICE may have deported her.

change of address within 21 days informing the court of her new address and granted Camara 45 days to file her response to the respondent's Motion to Dismiss.  (Doc. 14 at 1-3).  The undersigned warned Camara that her failure to file a notice of change of address could result in the dismissal of her case without further notice.  (Doc. 14 at 3).

The Clerk of Court served a copy of the March 10, 2023, Order on Camara at her address on file as well as at the South Louisiana ICE Processing Center.  (*See* Doc. 14 at 3).  On March 20, 2023, the postal service returned the March 10, 2023, Order sent to Camara at her address on file as undeliverable.  (Doc. 15).  To date, the postal service has not returned the March 10, 2023, Order sent to Camara at the South Louisiana ICE Processing Center.  Camara filed neither a response to the respondent's Motion to Dismiss nor a notice of change of address.

## II.   ANALYSIS

Respondent contends Camara's petition warrants dismissal pursuant to the mootness doctrine as BOP already granted Camara all the relief to which she stands entitled.  (Doc. 12 at 2-3).  The undersigned agrees.  In the alternative, Camara's petition warrants dismissal for her failure to prosecute her claims.

### A.   Mootness

"Article III of the Constitution limits the jurisdiction of federal courts to the consideration of 'Cases' and 'Controversies.'"  *Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002) (per curiam) (quoting U.S. CONST. art III, § 2).  "The doctrine of mootness derives directly from the case or controversy limitation because 'an action

that is moot cannot be characterized as an active case or controversy.'" *Id.* (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)).  "'A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (alteration adopted); *see also Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018) ("Mootness demands that there be something about the case that remains alive, present, real, and immediate so that a federal court can provide redress in some palpable way.")).  "'[P]ut another way, "a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."'" *Soliman*, 296 F.3d at 1242 (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000)); *see also Gagliardi*, 889 F.3d at 733 ("Thus, a case that was once cognizable under Article III becomes moot when 'an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit.'" (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013))).

"Therefore, 'if events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed.'" *Soliman*, 296 F.3d at 1242  (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001)) (alteration adopted); *see also Nyaga v. Ashcroft*, 323 F.3d 906, 913 (11th Cir. 2003) (per curiam) ("A district court lacks the power, on mootness grounds, to decide a case if its decision cannot affect the rights of the litigants in the case. … [A] case must be dismissed as moot if the court can no

longer provide meaningful relief." (internal quotation marks and citations omitted));
*Fla. Ass'n of Rehab. Facilities*, 225 F.3d at 1217 ("Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." (citation omitted)); *Gagliardi*, 889 F.3d at 733 ("'[A] federal court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'" (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992))).

At the time Camara filed her petition, the BOP anticipated releasing her from BOP custody on February 27, 2024.  (Doc. 1 at 13).  However, after Camara filed her petition, the BOP changed its policy concerning application of FSA time credits for prisoners subject to ICE detainers and applied 365 days of earned time credits to Camara's sentence, shortening her release date to February 27, 2023.[4]  (Doc. 12 at 2; Doc. 12-1 (Robles Decl.) at 2 ¶¶ 4-5; Doc. 12-3 at 2).  BOP released Camara to ICE custody on or around February 27, 2023, as ICE maintained an active detainer against Camara.[5]  (*See* Doc. 12 at 2-3, 5; Doc. 12-2; Doc. 13).

_____

[4] Camara acknowledges that BOP could only apply 365 days of her earned time credit to effect early release from custody.  (*See* Doc. 1 at 20).

[5] "Filing a detainer is simply an informal process, advising the officials of an institution in which a prisoner is incarcerated that the prisoner is wanted on pending criminal charges elsewhere, and requesting notification to the filing jurisdiction prior to the prisoner's release."  *United States v. Shahryar*, 719 F.2d 1522, 1524 n.3 (11th Cir. 1983) (per curiam) (citing *United States v. Mauro*, 436 U.S. 340, 358 (1978)); *see also* 8 C.F.R. § 287.7(a) ("Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an

Because Camara received her requested relief -- principally, release from BOP custody -- an order requiring application of 365-days earned time credit towards early release would bear no effect.[6]  (*See* Doc. 1 at 9, 20).  Put simply, "there is nothing for

---

alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.").

[6] Camara also requested that the court order BOP to apply the remaining days of earned time credit under the FSA to her period of supervised release.  (*See* Doc. 1 at 20).  However, the controlling statutes and federal regulations do not permit the use of FSA credits to shorten a term of supervised release.

Title 18 U.S.C. § 3632(d)(4)(C) provides, in pertinent part:

Time credits earned...by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C).

Title 18 U.S.C. § 3624 provides, in pertinent part:

Supervised release.--If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

18 U.S.C. § 3624(g)(3).

28 C.F.R. 523.44 provides in pertinent part:

(a)  How Time Credits may be applied. For any inmate eligible to earn FSA Time Credits under this subpart who is:

(1)  Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease

---

custody or supervised release as described in paragraphs (c) and (d) of this section.

(c) Prerelease custody. The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:

    (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

    (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:

        (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

        (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

        (iii) The prisoner is unlikely to recidivate.

(d) Transfer to supervised release. The Bureau may apply FSA Time Credits **_toward early transfer to supervised release_** under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:

    (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;

    (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and

    (3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

28 C.F.R. 523.44(a)(1), (c), & (d) (emphasis added). *See also United States v. Calabrese*, 2023 WL 1969753, No. 1:11-cr-00437, at *3 (N.D. Ohio Feb. 13, 2023) ("Plainly, the FSA allows a prisoner to either complete the service of their sentence in prerelease custody or complete their term of supervised release at an earlier date by transferring the prisoner to supervised release at an earlier date - the FSA does not allow a prisoner to reduce the imposed length of supervised release." (citing *Harrison v. Fed. Bur. of Prisons*, 2022 WL 17093441, No. 22-14312-Scola, at *1 (S.D. Fla. Nov. 21, 2022)); *Harrison*, 2022

[this court] to remedy, even if [it] were disposed to do so." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

Moreover, "the traditional purpose of habeas corpus" engenders "immediate or more speedy release."[7]  *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973).  Because BOP released Camara from its custody on or about February 27, 2023, Camara can no longer receive a speedier release from BOP custody, rendering her § 2241 habeas petition moot.  *Jones v. Garrett*, 2023 WL 3635628, No. 7:22-cv-1016-LCB-GMB, at *1 (N.D. Ala. May 24, 2023), *adopting report and recommendation*, 2023 WL 3638273 (N.D. Ala. May 8, 2023) (dismissing § 2241 habeas petition as moot after BOP released petitioner to ICE custody because "the court [could] no longer provide [petitioner] meaningful relief" as "[t]he only relief available via habeas corpus is 'immediate or more speedy release'" (quoting *Preiser*, 411 U.S. at 494)); *Tragas v. Garrett*, 2023 WL 3522435, No.

―――――――――――――――

WL 17093441, at *1 ("Based on the plain text of the statute, FSA credits cannot be used to shorten a term of supervised release. Rather, the credits can only be used to allow early transfer to supervised release."); *Orasco v. Yates*, 2022 WL 18027627, No. 2:22-cv-00156-BSM-ERE, at *3 n.4 (E.D. Ark. Dec. 12, 2022) *report and recommendation adopted* 2022 WL 18027631 (E.D. Ark. Dec. 30, 2022) ("And while the [earned time credit] program permits early transfer to supervised release, it does *not* grant the BOP authority to reduce or shorten a prisoner's term of supervised release." (emphasis in original)); *Sila v. Warden*, 2023 WL 2504476, No. EDCV 22-1632 RSWL (AS), at *2 (C.D. Cal. Feb. 13, 2023) *report and recommendation adopted* 2023 WL 2504989 (C.D. Cal. Mar. 13, 2023) ("The First Step Act requires the BOP to transfer inmates to prerelease custody or supervised release when such inmates become eligible based on earned time credits under the Act, *see* 18 U.S.C. §§ 3624(g)(3), 3632(d)(4)(C), but it does not provide for a reduction of supervised release terms, and the BOP is not authorized to reduce such terms." (citations omitted)). *But see Dyer v. Fulgam*, 2022 WL 1598249, No. 1:21-cv-299-CLC, at *3 (E.D. Tenn. May 20, 2022) (on appeal) (applying petitioner's unused earned time credit to his term of supervised release after concluding that 18 U.S.C. § 3632(d)(4)(C) "provides that earned-time credits may be applied to a term of supervised release").

   [7] Camara acknowledges in her petition that she "challenges the duration of her sentence and…seeks a speedier release from prison to supervised release."  (Doc. 1 at 22).

7:22-cv-899-LSC-GMB, at *1 (N.D. Ala. May 17, 2023), *adopting report and recommendation*, 2023 WL 3522599 (N.D. Ala. Apr. 28, 2023) (dismissing § 2241 habeas petition as moot after BOP released petitioner to ICE custody because "the court [could] no longer provide [petitioner] meaningful relief" (citing *Nyaga*, 323 F.3d at 913 (holding that "a case must be dismissed as moot if the court can no longer provide 'meaningful relief'")). Thus, no case or controversy remains for which the court can grant meaningful relief unless an exception to the doctrine of mootness applies.

Two exceptions to the mootness doctrine potentially apply to Camara's § 2241 habeas petition: (1) collateral consequences; and (2) capable of repetition, yet evading review. *See Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1120-21 (11th Cir. 1995).[8]

### 1.    Collateral Consequences

"An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7. "Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole

---

[8] The Eleventh Circuit Court of Appeals recognized a third exception to the mootness doctrine in *Brooks*: "where 'an appellant has taken all steps necessary to perfect the appeal and to preserve the status quo before the dispute becomes moot.'" 59 F.3d at 1121 (quoting *B & B Chem. Co. v. EPA*, 806 F.2d 987, 990 (11th Cir. 1986)). As this case does not involve an appeal, this exception does not apply.

- some 'collateral consequence' of the conviction - must exist if the suit is to be maintained." *Id.* (citing *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968)).  While the Supreme Court presumes that a wrongful criminal conviction has continuing collateral consequences, *id.* at 8, if the petitioner does not attack her conviction in her habeas petition, she must demonstrate collateral consequences flowing from the action challenged in her habeas petition, *see id.* at 14-16 (finding petitioner failed to demonstrate collateral consequences from parole revocation).  *See also Lane v. Williams*, 455 U.S. 624, 631 (1982) ("Since [petitioners] elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot. 'Nullification of a conviction may have important benefits for a defendant ... but urging in a habeas corpus proceeding the correction of a sentence already served is another matter.'" (quoting *North Carolina v. Rice*, 404 U.S. 244, 248 (1971)).  Camara does not argue she continues to suffer from collateral consequences because of the BOP's initial refusal to award her earned time credits under the FSA nor do any facts in the record demonstrate any "disabilities or burdens" Camara continues to suffer.  *See Carafas*, 391 U.S. at 237 (internal quotation marks and citation omitted).   As such, the collateral consequences exception to the mootness doctrine does not apply to Camara's § 2241 habeas petition.

### 2.    Capable of Repetition, Yet Evading Review

"The    capable-of-repetition    doctrine    applies    only    in    exceptional situations…where the following two circumstances are simultaneously present:  (1) the

challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again[.]" *Spencer*, 523 U.S. at 17 (alterations adopted) (internal quotation marks and citations omitted)); *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982) ("[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam))); *Weinstein*, 423 U.S. at 149; *Soliman*, 296 F.3d at 1243 ("[T]he narrow exception for cases that are capable of repetition yet evading review…can be invoked 'only in the exceptional circumstance in which the same controversy will recur and there will be inadequate time to litigate it prior to its cessation.'" (quoting *Al Najjar*, 273 F.3d at 1340)).

There exists no evidence Camara will demand proper application of FSA earned time credits in a future incarceration.  That is, while BOP will continue to apply the statutory and regulatory provisions of the FSA to the criminal sentences of prisoners within their custody, "there is no demonstrated probability that [Camara] will again be among that number." *See Weinstein*, 423 U.S. at 149.  As such, the 'capable of repetition, yet evading review' exception to the mootness doctrine does not apply to Camara's § 2241 habeas petition.  *See id.*

Because this court can no longer grant Camara meaningful relief and neither exception to the mootness doctrine applies, her § 2241 habeas petition warrants dismissal without prejudice as moot.

## B.     Failure to Prosecute

Even if Camara's § 2241 habeas petition does not stand moot, her petition warrants dismissal pursuant to Rule 41(b) of the *Federal Rules of Civil Procedure* for her failure to prosecute.[9]

On March 10, 2023, the undersigned ordered Camara to file a notice of change of address within 21 days informing the court of her new address. (Doc. 14 at 3). The undersigned warned Camara that failure to comply with the order could result in the dismissal of this action without further notice. (Doc. 14 at 3). The Clerk of Court served a copy of the March 10, 2023, Order on Camara at her address on file as well as at the South Louisiana ICE Processing Center. (*See* Doc. 14 at 3). On March 20, 2023, the postal service returned the March 10, 2023, Order sent to Camara at her address on file as undeliverable. (Doc. 15). To date, the postal service has not returned the March 10, 2023, Order sent to Camara at the South Louisiana ICE Processing Center.

More than 21 days have elapsed, and Camara failed to file the notice required by the March 10, 2023, Order, or otherwise respond to the March 10, 2023, Order. Accordingly, the undersigned recommends the court dismiss this action without prejudice for Camara's failure to prosecute her claims. FED. R. CIV. P. 41(b).

---

[9] Rule 12 of the *Rules Governing Section 2254 Cases in the United States District Courts* ("Habeas Rules") provides: "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." The district court may apply the Habeas Rules to 28 U.S.C. § 2241 habeas cases. *See* Rule 1(b), *Rules Governing Section 2254 Cases in the United States District Courts.*

### III.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** the court **GRANT** respondent's Motion to Dismiss, (doc. 12), and **DISMISS** this action **WITHOUT PREJUDICE** as **MOOT**.  In the alternative, the undersigned **RECOMMENDS** the court **DISMISS** this action **WITHOUT PREJUDICE** pursuant to Rule 41(b) of the *Federal Rules of Civil Procedure* for Camara's failure to prosecute her claims and **DENY** respondent's Motion to Dismiss, (doc. 12), as **MOOT**.

The undersigned **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation on Camara at her address on file as well as at South Louisiana ICE Processing Center, Yolanda Maria Feijoo-Camara, 3843 Stagg Ave, Basile, LA 70515.

### IV.   NOTICE OF RIGHT TO OBJECT

The petitioner may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within **14 days**. The petitioner must identify every objectionable finding of fact or recommendation and state the specific basis for every objection.  The petitioner also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A petitioner who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same

conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the petitioner's objections, a District Judge will conduct a de novo review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

The petitioner may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The petitioner may only appeal from a final judgment entered by a District Judge.

**DONE** this 8th day of June, 2023.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE